## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DIALYSIS PATIENT CITIZENS, et al.,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | **No. 17-2191** |
| | : | |
| **INDEPENDENCE BLUE CROSS and** | : | |
| **QCC INSURANCE COMPANY,** | : | |
| | : | |
| **Defendant.** | : | |

### ORDER

**AND NOW**, this 14th day of July, 2017, upon consideration of "Plaintiffs' Motion for Preliminary Injunction" (Doc. No. 4), the response (Doc. No. 19) and reply thereto (Doc. No. 20), correspondence from counsel (Doc. Nos. 28 and 29) and following a hearing, I find as follows:

1. Plaintiff Dialysis Patient Citizens ("DPC") is a non-profit organization whose members have End Stage Renal Disease ("ESRD"), many of whom receive financial grants from the American Kidney Fund ("AKF") to pay their health insurance premiums or other out-of-pocket expenses. The individual plaintiffs (five Jane and John Does) all have ESRD and have relied on grants from the AKF to pay for the premiums on their supplemental Medicare coverage ("Medigap") or their health plans purchased through the insurance exchanges created by the Affordable Care Act of 2010 ("ACA"). The individual plaintiffs have all purchased such plans from Defendant Independence Blue Cross ("IBC"). (Compl. ¶¶ 8, 15-19.)

2. In 2017, IBC updated its policy regarding payment by third-parties of members' out-of-pocket expenses. (Defs.' Resp., Gleason Decl. Ex. G, 2014 Independence Policy; Ex. H, 2017 Independence Policy.) That policy states that IBC will not accept premium or other payments on behalf of its members from third-parties except for the following individuals and entities:

   1. a Ryan White HIV/AIDS Program under title XXVI of the PHS Act;

   2. an Indian tribe, tribal organization, or urban Indian organization; or

   3. a local, state, or Federal government program, including a grantee directed by a government program to make payments on its behalf;

   4. family members; and

   5. "bona fide religious institutions and other bona fide not-for-profit organizations only when each of the following criteria is met:

      a) the assistance is provided on the basis of the insured's financial need,

      b) the institution or organization is not a healthcare provider or supplier,

      c) the premium payments and any Cost-Sharing Payments cover an entire policy year, and

      d) the institution or organization does not have any direct or indirect financial interests

   (Defs.' Resp., Gleason Decl. Ex. G, 2017 Independence Policy, p. 1.)

3. Plaintiffs allege that, pursuant to the 2017 policy, IBC announced its intention to begin rejecting payments made directly by the AKF on patients' behalf and sent ESRD patients letters stating that they must pay their premiums themselves or their insurance would be

cancelled.[1] Plaintiffs claim that without their health insurance they will die because they will be unable to pay for the life-sustaining dialysis they receive.

4. Plaintiffs bring the following claims: breach of contract; a violation of the issuance, renewability and termination requirements of the ACA; intentional discrimination in violation of section 1557 of the ACA, 42 U.S.C. § 18116; disparate impact discrimination in violation of section 1557 of the ACA, 42 U.S.C. § 18116; a violation of the Pennsylvania Unfair Trade Practices Act 40 P.S. § 1171.1 et seq., Pennsylvania's Consumer Protection Law, 73 P.S. § 201, et seq.; and the Pennsylvania Health Plan Corporation Act, 40 P.S. §§6101 et seq., 6301, et seq.

5. Presently before me is Plaintiffs' motion for a preliminary injunction seeking an order enjoining Defendants from refusing to accept premium payments from third-parties, including but not limited to the AKF.

6. Following an initial telephone conference to discuss thenext steps in resolving Plaintiffs' motion, the premium payment process was altered such that AKF began sending checks directly to patients who in turn now cash the check and pay their premiums from their own accounts or with money orders. (For ease of reference, I will refer to this indirect payment process as "the workaround.") Defendants have agreed not to terminate coverage for anyone who follows the workaround during the pendency of this litigation. Importantly, the undisputed evidence introduced at the preliminary injunction hearing confirms that no ESRD patient has been denied coverage since the workaround process was implemented.

---

[1] Plaintiffs allege that IBC did in fact reject payments made directly by AKF. Plaintiffs further allege that, as a result, one individual plaintiff's coverage was terminated but subsequently reinstated.

7. Nonetheless, Plaintiffs contend that this arrangement does not moot their injunction motion because (1) Defendants' policy of not accepting payments from third-parties is still posted on IBC's website; (2) Defendants acceptance of the workaround is voluntary and, therefore, Defendants may take action inconsistent with their acceptance at any time; and (3) Defendants have not notified ESRD patients in writing that the policy is no longer in effect.

**Legal Standard**

8. A preliminary injunction is an extraordinary remedy. Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989). As such, the granting of preliminary injunctive relief is restricted to limited circumstances. Id. In order to obtain a preliminary injunction, a plaintiff must establish four elements:

   (1) the likelihood that the plaintiff will prevail on the merits at final hearing;

   (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of;

   (3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction is issued; and

   (4) the public interest.

   A.T.&T. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994).

9. A preliminary injunction "should issue only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." Id.

10. The United States Court of Appeals for the Third Circuit instructs that in order to demonstrate a likelihood of success on the merits "[i]t is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather, the burden is on the party seeking relief to make a Prima [sic] facie case showing a reasonable

probability that it will prevail on the merits." <u>Oburn v. Shapp</u>, 521 F.2d 142, 148 (3d Cir. 1975).

11. The second prong of the preliminary injunction standard requires that I consider the extent to which Plaintiffs will suffer irreparable harm absent the requested relief. <u>See</u> <u>Clean Ocean Action v. York</u>, 57 F.3d 328, 331 (3d Cir. 1995).

12. The third prong of the preliminary injunction standard requires I consider "whether granting preliminary relief will result in even greater harm to the nonmoving party." <u>Allegheny Inc. v. DQE, Inc.</u>, 171 F.3d 153, 158 (3d Cir. 1999).

13. The fourth prong requires an assessment of whether granting injunctive relief is in the public interest. <u>Winback & Conserve Program</u>, 42 F.3d at 1427 n.8. The Third Circuit has recognized that "[a]s a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." <u>Id.</u>

## Discussion

14. For the reasons discussed below, Plaintiffs have not offered evidence to demonstrate that they will be irreparably harmed if action is not taken to address (1) the continued posting of the 2017 policy on IBC's website; (2) the fact that IBC's adherence to the workaround process described above is voluntary; or (3) IBC's refusal to "notify in writing those who received letters from Independence that Independence's policy is no longer in effect."

15. According to Plaintiffs, if the policy remains posted on IBC's website, individuals with ESRD will be discouraged from applying for coverage based on the misperception that they are prohibited from relying on AKF funds to help pay their premiums. This concern is speculative and unsupported by any affidavits offered by Plaintiffs. Indeed, Plaintiffs

have offered no evidence that any person with ESRD had in fact been discouraged from applying for coverage. Absent any such evidence, the concern Plaintiffs identify cannot support the extraordinary remedy of preliminarily enjoining IBC from posting the policy on its website.

16. Plaintiffs' concern that IBC may reverse course and begin refusing to accept payments from patients who are relying on the workaround is also speculative. Defendants have submitted a sworn declaration from Jennifer Gallagher, Associate Deputy General Counsel at IBC, attesting that IBC will accept the payments made consistent with the workaround during the pendency of this litigation. (Defs.' Resp., Decl. of Jennifer Gallagher at ¶ 2.) This declaration is unrebutted. If Defendants do in fact take actions inconsistent with the representations in Ms. Gallagher's declaration, that conduct can be immediately addressed through a renewed motion.

17. In their submissions and during the hearing, Plaintiffs failed to articulate, let alone offer evidence, as to how Defendants' failure to "notify in writing those who received letters from Independence that Independence's policy is no longer in effect" will cause irreparable harm.

18. Plaintiffs urge that their request for injunctive relief is supported by East v. Blue Cross & Blue Shield of Louisiana, 2014 WL 8332136 (M.D. La. Feb. 24, 2014). In East, the district court granted the named plaintiff's request for a temporary restraining order to prevent the defendant insurance provider from rejecting third-party premium payments by a charity on behalf of HIV/AIDS patients. Id. at *2. The district court found irreparable harm on the basis that the defendant had refused to accept third-party payments on the named plaintiff's behalf and a result the named plaintiff was without

health insurance and would likely die when he ran out of his essential medication. Id. at *2. As such, the court concluded that a temporary restraining order was appropriate given the "severe ramifications to [the named plaintiff] and other members of his putative class if their insurance coverage is allowed to lapse." Id. at *2.

19. Unlike East, the facts before me demonstrate that none of the named plaintiffs are currently without health insurance and that there is no immediate threat that their coverage will be terminated. These are significant distinctions. East does not change the foregoing analysis of the substantive arguments Plaintiffs advanced in support of their request for preliminary injunctive relief.

20. As Plaintiffs have presently not demonstrated a likelihood of irreparable harm, they are not entitled to the injunctive relief they seek and I need not consider the other three factors. NutraSweet Co. v. Vit-Mar Enterprises, Inc., 176 F.3d 151, 153 (3d Cir. 1999) ("A plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate"). I will however deny Plaintiffs' motion without prejudice and they are free, of course, to renew their motion (if supplemented with supporting evidence) or request a hearing to present testimony to demonstrate the irreparable harm they claim.

**WHEREFORE**, it is hereby **ORDERED** that Plaintiffs' motion is **DENIED** without prejudice.

BY THE COURT:

Mitchell S. Goldberg, J.

7